## KELLY *v.* FYNN.

-----

PATENTS; INTERFERENCE.

1. Where a patent has been granted to one of the parties to an interference, the burden upon the other party is not only to prove his case by a preponderance of the testimony but beyond a reasonable doubt.

2. Where over two months after the granting of a patent to F for certain improvements in dynamo-electric machines, K filed his application and copied the claims of F's patent in order to be placed in interference with that patent, and in the interference which followed, F relied upon the record date of his application to show his conception and reduction to practice, while K's testimony showed a prior conception, but failed to show except by his own testimony that a machine he had constructed prior to the date of his rival's application, and which he claimed to embody the invention, was operative, although such machine was in existence at a factory in which his testimony was taken, and although one of his witnesses, a mechanical engineer, connected with the factory, testified as to the construction of the machine and could readily have been examined as to its operativeness, it was *held,* sustaining a decision of the Commissioner of Patents, which followed the rulings of the other tribunals of the Patent Office, that F was entitled to an award of priority.

No. 148. Patent Appeals. Submitted May 9, 1900. Decided June 6, 1900.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. H. B. Brownell* and *Mr. Charles E. Mitchell* for the appellant.

*Mr. Philip Mauro, Mr. Reeve Lewis* and *Mr. C. A. L. Massie* for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference case.

The appellee, Valere A. Fynn, of Kent, in England, on August 3, 1896, filed an application in the Patent Office for letters patent for certain improvements in dynamo-electric machines; and for his claims, as finally formulated after various amendments, he was allowed a patent on August 3, 1897. In the meantime for the same invention he had received an English patent, dated December 20, 1895, but sealed on November 3, 1896; and also a Belgian patent, dated July 28, 1896. The claims in issue here are stated in his American patent in the following terms:

"1. In a dynamo-electric machine, the combination with an armature of a field-magnet having its poles arranged alternately in different planes, each pole embracing a section or portion only of the armature lengthwise of its axis, one portion or section of the armature being acted upon by south poles only, and the other by north poles only, so that the magnetic flux through each section of the armature varies with its intensity without reversing its direction therein.

"2. In a dynamo-electric machine, the combination of an armature composed of two laminated rings or sections, and a field-magnet having its two sets of poles arranged alternately in different planes transversely of the shaft, the poles of the same polarity acting upon the same armature ring or section.

"3. In a dynamo-electric machine, the combination of an armature composed of two laminated rings or sections arranged side by side and separated by a collar, and a field-magnet having its two sets of poles arranged alternately in different planes transversely of the shaft, the north poles

being in the plane of one of said rings or sections, and the south poles in the plane of the other ring or section.

"4. In a dynamo-electric machine, the combination of an armature composed of two rings or sections arranged side by side, a field-magnet having its two sets of poles arranged alternately in different planes, the north poles being in the plane of one of said rings or sections, and the south poles in the plane of the other ring or section, and a single exciting-coil arranged between the two planes.

"5. In a dynamo-electric machine the combination with an armature composed of two rings or sections and a winding whose coils embrace both rings or sections, of a field-magnet having its two sets of poles arranged alternately in different planes transversely of the shaft, the poles of like polarity acting upon the same armature ring or section."

On October 20, 1897, upwards of two months after the issue of the patent to Fynn, which had come to his notice, Kelly filed his application for the same invention, and copied the claims of Fynn's patent for the purpose of being promptly put in interference with that patent. The interference was declared, and the parties filed their preliminary statements. Fynn alleged that he had conceived the invention and made sketches of it in October of 1895, made disclosure of it in December of 1895, made a model of it in November of 1895, and that a full-sized machine embodying the invention was placed upon the market about January 20, 1896. But he took no testimony to support his allegations, and therefore is compelled to rely upon the record date of his application (August 3, 1896) as that of his conception and constructive reduction to practice.

Kelly, in his preliminary statement, alleged that in August, 1894, he conceived and made sketches of the invention and explained it to others; that he made working drawings of it in October, 1894; and that he embodied his invention in a full-sized machine, finished about January 1, 1896,

and which was successfully operated as early as January 15, 1896. He took testimony in support of these allegations; but all the tribunals of the Patent Office in succession held that the testimony was insufficient to show reduction to practice by him at any time before the time of the filing of Fynn's application, although they conceded to him a priority of conception. Accordingly, they awarded judgment of priority of invention to Fynn; and from the Commissioner's decision in that regard the present appeal has been prosecuted.

Upon the appellant was and is the burden of proving his case beyond a reasonable doubt. Besides being the junior applicant, he has a patent to contend with; he came into the Patent Office after the patent had been issued to the appellee, and induced so to do by his perusal of that patent; and he comes to this court with the three concurrent decisions of the Patent Office against him. We are not satisfied that he has borne this burden successfully. The appellee has rested on the record date of his application (August 3, 1896), as that of his conception and constructive reduction to practice. The testimony on behalf of the appellant is undoubtedly sufficient to show conception by him of the invention at a much earlier date, as early at least as August 23, 1894, or January 16, 1895, upward of a year and a half before Fynn's application. The sketches then made by him are held by all the tribunals of the office to embody the invention in controversy; and that conclusion would seem to be just. There is no attempt to controvert it on behalf of the appellee. But there is grave doubt in regard to his reduction to practice.

The appellant was connected with the Stanley Electric Manufacturing Company of Pittsfield, in the State of Massachusetts. He communicated his invention to the managers of that company; and an order was given by them for the construction in their works of a full-sized machine to embody the invention. This was on January 16, 1895;

and the machine seems to have been in course of construction during the whole of that year. It was completed so far as to be capable of being tested in the latter part of the year. That machine is still in existence, or was in existence at the time at which the testimony was taken, and was shown to the counsel for the appellee at the shops of the company. The machine itself was not put in evidence as an exhibit on account of its great size and weight. It was about six feet and six inches in length by about three feet and eleven inches in height, and weighed nearly six thousand pounds. The body of it, which was the machine proper, was a cylinder about thirty-three inches in diameter by thirty inches in length. But a photograph of it was put in evidence. It is claimed that this machine was a reduction of the invention to practice, and was a practical operative machine.

The appellant testified on his own behalf, apparently quite fully and fairly. The only witness besides himself was the mechanical engineer of the company, under whose superintendence the machine in question was constructed. The testimony of the latter was confined to the identification of Kelly's sketches and drawings as of the date of August 23, 1894; the order given on January 16, 1895, for the construction or the machine; and the actual construction of the machine before the end of that year. But he was not interrogated, and he did not testify, as to the capability or operativeness of the machine. And there is no testimony whatever on that point except that of the appellant himself; and his testimony is far from satisfactory. He stated that he had made tests of the machine, beginning with January, 1896, and continuing to May or June, 1897; that as a result of these tests, he made several experimental changes in it; that the machine was made for the purpose of study, but with the expectation on his part that, if the Stanley Electric Manufacturing Company should engage commercially in the rotary transformers, this machine would

serve as a model and a type. He stated also that his invention belonged to the Stanley Electric Manufacturing Company, as did all his other inventions of the same class, since January 1, 1895; and that since that date he had taken out seven patents for the company, in some of which he was the sole inventor, in others a joint inventor with others; but that he had not felt any pressure about this one, in view of a previous patent issued to him which covered principles essential to the construction of the rotary transformer, which was his present machine.

This testimony, as is apparent, is exceedingly inconclusive as to the operative character of the machine in question. It is very strange that no one else was called to testify on that point; and yet it would seem that the fact, if fact it was, could easily have been established by other witnesses. The mechanical engineer, who testified as to the construction of the machine, was competent to testify as to its operative character. If the inventor's tests were not made in secret and for the purpose of not being disclosed, those in whose presence they were made might have testified. When, in the course of the taking of the testimony in the company's shops, where it was taken, the machine was exhibited, it is not apparent that it might not have been tested then and there, and its operativeness made evident, if it was in fact operative. Nor is it apparent why it was not offered to be submitted to the experts of the Patent Office, or to other experts, for examination. The delay and apparent indifference of the appellant in regard to an application for patent until he saw the patent of the appellee, are also significant. The almost unavoidable inference, both from the testimony itself and from the remarkable omissions in the testimony, is that the machine was in its experimental stage, and was not a complete operative machine.

It might be, as we recently remarked in another case, that if the case were one to be governed by the mere preponderance of evidence, possibly the appellant would be

entitled to prevail; but there is not that proof on his behalf beyond reasonable doubt which is required to enable a junior applicant in an interference suit to prevail against a patentee. We think, therefore, that, in the absence of such proof, the Commissioner of Patents was right in awarding judgment of priority of invention to the appellee, and that his decision should be *affirmed.*

The clerk will certify this opinion and the proceedings in this cause to the Commissioner of Patents, according to law.